The Honorable Barbara King State Representative 106 Tulip Circle Helena, AR 72342
Dear Representative King:
You have requested an Attorney General opinion concerning the retirement plan for police officers in DeWitt, Arkansas. You indicate that the City of DeWitt established a retirement plan for police officers by enacting Ordinance No. 291, on July 10, 1973. The plan has utilized three different companies during its history. Under the current plan, the officers contribute a percentage of their salaries, and the City of DeWitt matches up to 5%. The combined amount accumulates interest.
With regard to DeWitt's situation, you have presented the following questions:
 (1) Are all of the DeWitt police officers entitled under Arkansas law to be enrolled in the Arkansas Local Police and Fire Retirement System (commonly referred to as "LOPFI")?
 (2) Are the DeWitt Police officers who were hired after January 1, 1983, entitled under Arkansas law to be enrolled in LOPFI?
 (3) Can the city choose to drop retirement and not enroll officers in LOPFI?
 (4) Is the officers' current plan considered to be a retirement system, trust fund, and/or relief fund?
 (5) After being enrolled in LOPFI, are the officers entitled to the monetary value of the current plan?
RESPONSE
Question 1 — Are all of the DeWitt police officers entitled underArkansas law to be enrolled in the Arkansas Local Police and FireRetirement System (commonly referred to as "LOPFI")?
It is my opinion that all DeWitt police officers are not only entitled to be members of LOPFI, but must be members of LOPFI.
This question is governed by A.C.A. § 24-10-301, which states in pertinent part:
(a) The membership of the system shall include the following persons:
* * *
 (4) If his employer did not have its police officers covered by a relief fund on the operative date,[1] all persons employed as police officers on the date the employer covers police officers under this subchapter shall become members of the system as of that date, and each person first employed as a police officer thereafter shall become a member upon employment.
A.C.A. § 24-10-301(a)(4). It should be noted that the language of this provision is mandatory. See Campbell v. State, 311 Ark. 641,846 S.W.2d 639 (1993) (use of the word "shall" indicated intent that provisions be mandatory).
Although it is true that DeWitt did have some type of retirement plan in effect on the operative date, that plan did not, in my opinion, constitute a "relief plan," within the meaning of A.C.A. §24-10-301(a)(4).
The term "relief fund," as used in A.C.A. § 24-10-301, is defined as follows:
(28) "Relief fund" means:
 (A) Any police officers' pension and relief fund created by state law, applicable to police officers, and covering one (1) or more persons on December 31, 1982. . . .
A.C.A. § 24-10-102(28).
The retirement plan that was created by DeWitt's Ordinance No. 291 did not fall within the above-quoted definition of "relief fund," because it was not created by state law, nor was it based on specific state-law authorization.[2] Therefore, because DeWitt did not have a "relief fund" in effect on the operative date, the provisions of A.C.A. §24-10-301(a)(4) are applicable, and the city was required to cover all of its police officers under LOPFI.
Question 2 — Are the DeWitt Police officers who were hired after January1, 1983, entitled under Arkansas law to be enrolled in LOPFI?
Yes. See response to Question 1.
Question 3 — Can the city choose to drop retirement and not enrollofficers in LOPFI?
It is my opinion that the city cannot choose to drop retirement and not enroll officers in LOPFI.
As noted in response to Question 1, the statutes providing for LOPFI membership for all police officers in political subdivisions not having relief funds in effect on the operative date are mandatory. The mandatory nature of this requirement is reiterated in A.C.A. § 24-10-302, which states in pertinent part:
 (c) After the effective date,[3] a political subdivision shall not commence coverage of its employees who are police officers or fire fighters under another plan similar in purpose to this system, except social security.
A.C.A. § 24-10-302(c).
I have concluded that political subdivisions not having relief funds in effect on the operative date are required to cover their police officers under LOPFI. Accordingly, I must conclude that these political subdivisions do not have the option to drop that coverage, or to fail to enroll new employees in LOPFI.
Question 4 — Is the officers' current plan considered to be a retirementsystem, trust fund, and/or relief fund?
I cannot opine affirmatively or definitively as to the nature of the plan that was created by DeWitt Ordinance No. 291. Such an opinion would require me to engage in a construction of Ordinance No. 291. The Attorney General is not authorized to construe local ordinances. See Op. Att'y Gen. No. 99-068.
Moreover, I cannot answer this question without knowing the definitions that you have applied to the terms "retirement system," "trust fund," and "relief fund," as used in your question.
Nevertheless, because a relevant statutory definition of the term "relief fund" is available, I am able to conclude that the plan established by DeWitt Ordinance No. 291 does not constitute a "relief fund," within the meaning of A.C.A. § 24-10-301.
Again, the term "relief fund" is defined in A.C.A. § 24-10-102, as follows:
(28) "Relief fund" means:
 (A) Any police officers' pension and relief fund created by state law, applicable to police officers, and covering one (1) or more persons on December 31, 1982. . . .
A.C.A. § 24-10-102(28).
As explained in response to Question 1, the plan that was created by DeWitt Ordinance No. 291 does not fall within the above-quoted definition of "relief fund," because it was not created by state law, nor was it based on specific state-law authorization. That plan therefore plainly does not constitute a "relief fund."
However, the question of whether this plan constituted a "retirement system" or a "trust fund" is an issue that I am unable to address.
Question 5 — After being enrolled in LOPFI, are the officers entitled tothe monetary value of the current plan?
State law does not address this question. The answer will depend upon the specific terms of the plan itself, as well as on an interpretation of DeWitt Ordinance No. 291. As noted in response to Question 1, the Attorney General is not authorized to interpret local ordinances, nor is he authorized to analyze specific retirement plans. I am therefore unable to opine in response to this question.
Nevertheless, I will note that under the provisions of A.C.A. §24-10-302(d), the city is authorized to convert past service under a previous plan or plans (that were sufficiently similar to LOPFI) to credited service under LOPFI, for officers who were covered under the previous plan, provided that such action does not result in a duplication of benefits. That statute states:
 (d)(1) In the event an employer has in effect for all or part of its employees a plan similar in purpose to this system, then by agreement with the board, after the board has received the advice of its technical advisors concerning the agreement, that employer may provide for coverage under this system of either part or all of the employee's employment previously covered or coverable by the other plan, but only if the coverage and resulting benefits under this chapter do not duplicate any benefits previously provided by the other plan.
A.C.A. § 24-10-302(d). It should be noted that this provision might provide a means of correcting erroneous past coverage.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SBA/cyh
[1] The term "operative date," as used in A.C.A. § 24-10-301, above, is specifically defined in A.C.A. § 24-10-102(33) to mean January 1, 1983.
[2] An example of a relief fund created by state law, or pursuant to state-law authorization would be a fund established under the authority of A.C.A. § 24-11-401 et seq.
[3] The "effective date" referred to in the above-quoted provision is defined in A.C.A. § 24-10-102(34) to mean July 1, 1981.