

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-16-457

| | | |
|---|---|---|
| | | **Opinion Delivered** November 30, 2016 |
| HOLLY K. RICE | | APPEAL FROM THE MISSISSIPPI |
| | APPELLANT | COUNTY CIRCUIT COURT, |
| | | CHICKASAWBA DISTRICT |
| | | [NO. 47DR-10-246] |
| V. | | |
| | | HONORABLE CHARLES BRENT DAVIS, |
| | | JUDGE |
| SCOTT RICE | | |
| | APPELLEE | AFFIRMED |

## LARRY D. VAUGHT, Judge

Appellant Holly Rice appeals from the Mississippi County Circuit Court's grant of appellee Scott Rice's motion for directed verdict during the hearing on her motion to change custody of their two children. The only point she raises on appeal is that the court erred in finding that there were not changed circumstances warranting modification of custody. We disagree and affirm.

While married, Holly and Scott Rice had one biological child, and he adopted her child from a previous relationship. During divorce proceedings in 2010, the court initially awarded temporary joint custody of the two children. However, during the course of the case, Scott filed for an order of protection against Holly, after which Holly entered drug rehabilitation, withdrew her complaint for divorce, waived corroboration of grounds on Scott's complaint, and voluntarily transferred custody of the children to Scott. The court granted Scott permanent custody of the children and granted Holly standard visitation.

On February 26, 2015, Holly filed a motion for change of custody, alleging that "the Defendant has remarried; he is currently separated from his new wife; and, at the present time the Defendant is not employed, and has no ascertainable financial means to support himself."

At the hearing, the evidence demonstrated that Holly had successfully completed drug rehabilitation, had moved back to Blytheville from Jackson, Tennessee, had obtained stable employment, was purchasing a three-bedroom house, and was consistently attending addiction-support meetings.

Scott had remarried and moved himself and the children to Paragould. However, when it became clear that his children and his new wife's children could not peacefully coexist and should not continue to live together, he and the children moved into a two-bedroom apartment. He and his new wife divorced, but ultimately reconciled, deciding to remarry while continuing to live apart because they felt it was best for the children. Scott quit his job in Blytheville when he moved to Paragould, but he found part-time work as a substitute teacher. He then found a new job at Mid-South Health, and together, he and his new wife are able to pay their bills.

The couple's eleven-year-old daughter testified that she would prefer to live with Holly. However, her testimony was fairly even as to both parents; she testified about things she liked and disliked about living with each.

At the close of Holly's evidence, Scott moved for a directed verdict, arguing that she had failed to prove that there was a material change in circumstances to warrant a modification of custody. In response, Holly's attorney listed numerous changes that had occurred since the divorce, including Scott's marriage, divorce, remarriage, and separate living arrangement; the

SLIP OPINION

move from Blytheville to Paragould; Scott's change of jobs; and the kids' move from one school to another. Scott's attorney countered that, while there had been many changes, there had not been anything that legally met the requirements of a material change in circumstances warranting modification of custody.

The court granted Scott's motion for directed verdict, ruling from the bench that, while there had been changes, none of those changes had a negative or detrimental impact on the children. Therefore, the court found that there had not been a material change in circumstances, so it declined to further address the issue of modification of custody.[1] Following the hearing, the court issued a lengthy order outlining its findings. It found that Scott's marriage, divorce, remarriage, and separate living arrangement were not material changes because the changes had not had any negative impact on the children and because their current living situation was similar to what it had been at the time of the divorce. The court also found that Scott's change in jobs was not a material change in circumstances because he continued to be employed and earn money, and that he had financial means (through his own income and that of his wife) to meet the kids' needs. The court noted that a custodial parent's relocation and change in jobs in order to live with or near a new spouse is not sufficient to constitute a material change in circumstances. The court found no evidence to support Holly's claim that Scott had no financial means to support himself. The court then specifically found that while "there have been some changes in factors and circumstances, none of these changes approach a material change in circumstances that would merit a

---

[1]The court also modified Holly's child-support obligation, but she has not appealed that portion of the order.

SLIP OPINION

modification of custody." It is the circuit court's duty, in deciding a motion to dismiss made after the presentation of the plaintiff's case, to determine whether, if the case were a jury trial, there would be sufficient evidence to present to a jury. *Wagner v. Wagner*, 2011 Ark. App. 475, at 2 (citing *Woodall v. Chuck Dory Auto Sales, Inc.*, 347 Ark. 260, 264, 61 S.W.3d 835, 838 (2001)). The circuit court does not exercise its fact-finding powers, such as judging the witnesses' credibility, in making this determination. *Id.* On appeal, we view the evidence in the light most favorable to the nonmoving party, giving the proof presented its highest probative value and taking into account all reasonable inferences deducible therefrom. *Id.* We affirm if there would be no substantial evidence to support a jury verdict. *Id.* In other words, when "the evidence is such that fair-minded persons might reach different conclusions, then a jury question is presented, and the directed verdict should be reversed." *Id.* at 2–3.

Arkansas law is well settled that the primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary. *Harris v. Harris*, 2010 Ark. App. 160, at 13, 379 S.W.3d 8, 16. A judicial award of custody will not be modified unless it is shown that there are changed conditions that demonstrate that a modification of the decree will be in the best interest of the child, or when there is a showing of facts affecting the best interest of the child that either were not presented to the circuit court or were not known by the circuit court at the time the original custody order was entered. *Id.* at 13, 379 S.W.3d at 16; *Stehle v. Zimmerebner*, 375 Ark. 446, 291 S.W.3d 573 (2009). Generally, courts impose more stringent standards for modifications in custody than they do for initial determinations of custody. *Grisham v. Grisham*, 2009 Ark. App. 260. The reasons for requiring more stringent standards for modifications than for initial custody determinations are to

promote stability and continuity in the life of the child and to discourage repeated litigation of the same issues. *Id.* The party seeking modification has the burden of showing a material change in circumstances. *Byrd v. Vanderpool*, 104 Ark. App. 239, 290 S.W.3d 610 (2009).

Holly's only argument on appeal is that the court erred in granting Scott's directed-verdict motion based on its conclusion that she had failed to present sufficient evidence of changed circumstances to warrant modification. Holly's argument is misplaced. As the circuit court expressly noted in both its oral ruling and its written order, the test is not whether there have been any changes, but whether there have been any "material changes *demonstrating that a modification is in the best interest of the child*." *Lloyd v. Butts*, 343 Ark. 620, 37 S.W.3d 603 (2001) (emphasis added). Here, the court properly considered the impact of each change (and the impact of the aggregated changes) in determining whether there had been a *material* change in circumstances. A brief examination of our caselaw on this issue is helpful.

In *Calhoun v. Calhoun*, 84 Ark. App. 158, 163, 138 S.W.3d 689, 692 (2003), we reversed a trial court's order finding a material change in circumstances but then placing the burden of proof on the noncustodial parent to prove that the material change had an adverse impact on the child. In *Calhoun*, we cautioned that

> [w]e do not hold, however, that the circuit court should never consider whether there was adverse impact on the child when determining whether a material change in circumstances has occurred. In *Taylor v. Taylor*, 353 Ark. 69, 110 S.W.3d 731 (2003), the Arkansas Supreme Court addressed the issue of whether the noncustodial parent showed a material change in circumstances. In holding that the noncustodial parent's evidence was insufficient to constitute a material change in circumstances, the court noted that the noncustodial parent "failed to demonstrate any actual harm or adverse effect." Accordingly, in some instances it may be the adverse impact on a child that makes a change in circumstances "material."

*Calhoun*, 84 Ark. App. at 163, 138 S.W.3d at 692. However, we have also held that "there is no requirement that the trial court wait until the children are actually harmed before finding that a material change in circumstances warranting a change in custody exists." *Sisson v. Sisson*, 2012 Ark. App. 385, at 13, 421 S.W.3d 312, 319 (citing *Boudreau v. Pierce*, 2011 Ark. App. 457, 384 S.W.3d 664). In *Valentine v. Valentine*, 2010 Ark. App. 259, at 6, 377 S.W.3d 387, 390, we reconciled these holdings by ruling that, when a court bases its ruling on a finding that the changes had not had an adverse impact on the children, the court was simply conducting the required two-part changed-circumstances analysis rather than placing any burden on the noncustodial parent to prove adverse impact.

In the present case, the court clearly acknowledged that there had been changes but properly considered whether those changes had any negative or detrimental impact on the children in determining if they were material. It found that they had not had any such impact and therefore found that the changes were not material. Even reviewing the evidence in the light most favorable to the nonmoving party, giving the proof presented its highest probative value, and taking into account all reasonable inferences deducible therefrom, as we must in an appeal from the grant of a directed verdict, we affirm because there was no substantial evidence introduced at the hearing from which a reasonable fact-finder could find that the changes had negatively impacted the couple's children.

Holly's argument also fails because, even if she is correct that the court combined the changed-circumstances and best-interest analyses, it fully addressed each prong.[2] While we

---

[2]As to each alleged change, the court determined whether the circumstance was actually different than it had been at the time of the decree, and if so, then addressed whether that

have numerous cases outlining a two-step analysis in which "the trial court 'must first determine that a material change in circumstances has transpired from the time of the divorce decree and, then, determine that a change of custody is in the best interest of the child,'" *see Singletary v. Singletary*, 2013 Ark. 506, at 9, 431 S.W.3d 234, 240 (quoting Lewellyn v. Lewellyn, 351 Ark. 356, 93 S.W.3d 681 (2002), we also have numerous cases that combine both prongs of the test into a single statement. *Lloyd v. Butts*, 343 Ark. 620, 37 S.W.3d 603 (2001) (defining the test as whether there have been any material changes demonstrating that a modification is in the best interest of the child); *Campbell v. Campbell*, 336 Ark. 379, 985 S.W.2d 724 (1999) (defining the test as whether there has been a material change in circumstances which affects the welfare of the child). Therefore, we see no reversible error in the manner of the circuit court's analysis.

Finally, to the extent that Holly is arguing on appeal that the court erred in considering only the alleged changes in Scott's circumstances and not her own improvement in circumstances (such as successfully completing drug rehabilitation and staying sober), we note the Arkansas Supreme Court has previously held that changes of circumstances of the noncustodial parent are not sufficient, standing alone, to justify modifying custody but may be considered as factors in conjunction with changes in the custodial parent's circumstances. *See Alphin v. Alphin*, 364 Ark. 332, 219 S.W.3d 160 (2005). However, Holly's motion for change of custody alleged changes pertaining only to Scott. As a result, the court's written order is limited to the specific allegations raised in her motion, all of which relate to Scott's

_____

change had any detrimental impact on the children. It also addressed the impact of the changes in the aggregate.

7

circumstances, not her own. She then failed to raise any objection to the circuit court's reliance solely on Scott's circumstances, rendering the issue unpreserved for appellate review. A party is bound by the scope and nature of the arguments made at trial. *Lewis v. Robertson*, 96 Ark. App. 114, 239 S.W.3d 30 (2006). Because this allegation of error was not raised and decided below, we are precluded from reaching its merits now. *Id.*

Affirmed.

ABRAMSON and BROWN, JJ., agree.

*James W. Harris*, for appellant.

*Burrow & Walker*, by: *Gina M. Knight*, for appellee.